## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Painting Industry Insurance and Annuity Funds,

        Plaintiff,

    -against-

AMBAC ASSURANCE CORPORATION, AMBAC
FINANCIAL GROUP, INC., SEAN T. LEONARD,
ROBERT J. GENADER, PHILLIP B. LASSITER,
MICHAEL A. CALLEN, JILL M. CONSIDINE; W.
GRANT GREGORY; THOMAS C. THEOBALD;
LAURA S. UNGER; HENRY WALLACE, CITIGROUP
GLOBAL MARKETS INC., GOLDMAN, SACHS &
CO., J.P. MORGAN SECURITIES INC., HSBC
SECURITIES (USA) INC., LEHMAN BROTHERS INC.,
MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED, UBS SECURITIES LLC and
WACHOVIA CAPITAL MARKETS, LLC,

        Defendants.

'U8 CIV 6602

Civil Action No.

**JURY TRIAL DEMANDED**



## CLASS ACTION COMPLAINT
## FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Plaintiff Painting Industry Insurance and Annuity Funds ("Plaintiff"), on behalf of itself

and all others similarly situated, by and through its undersigned counsel, Kaplan Fox &

Kilsheimer LLP, allege the following. [1]

### I.    NATURE OF THE ACTION

1.    This action asserts claims under the Securities Act of 1933 (the "Securities Act")

on behalf of purchasers of $400 million of Directly-Issued Subordinated Capital Securities

---

[1] Plaintiff believes this action is related to the currently pending action captioned, *In re Ambac Financial, Inc. Securities Litigation*, Case No. 08-CV-00411-NRB ("*In re Ambac*"), pending before Judge Buchwald in the Southern District of New York. In *In re Ambac*, Judge Buchwald appointed Kaplan Fox & Kilsheimer LLP and Bernstein Litowitz Berger & Grossmann LLP as co-lead counsel for Lead Plaintiffs Arkansas Teacher Retirement System, Public Employees' Retirement System of Mississippi "Mississippi PERS", Public School Teachers' Pension and Retirement Fund of Chicago.  Plaintiff anticipates that its counsel Kaplan Fox will consolidate the claims asserted herein as appropriate in the consolidated amended complaint to be filed in *In re Ambac*.

("DISCS") issued by defendant Ambac Financial Group, Inc. ("Ambac" or the "Company"). On or about February 7, 2007, Ambac and the Underwriter Defendants sold $400 million face value of the DISCS, which were priced at 99.335% of their par face value, for a total offering price of $397.34 million (the "February 2007 DISCS Offering"). The DISCS were offered and sold pursuant to a shelf Post-Effective Amendment No. 1 to Form S-3 filed with the U.S. Securities and Exchange Commission ("SEC") on February 6, 2007 (the "Post-Effective Amendment No. 1"), and a 424B5 prospectus supplement (the "DISCS Prospectus") dated February 7, 2007 (collectively, the "DISCS Registration Statement").

2.      Plaintiff's claims are brought on behalf of persons who purchased DISCS issued pursuant to the DISCS Registration Statement. As set forth herein, the Registration Statement and the SEC filings incorporated therein by reference contained misrepresentations or omissions of material fact, or incorporated by reference documents that contained misrepresentations and omissions of material fact.

## II.      JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action under Section 22 of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. §§ 1331 and 1337. The claims alleged herein arise under Sections 11, 12(a)(2) and 15 of the Securities Act, 15 U.S.C. §§ 77k, 77(l)(a)(2) and 77o, and the rules and regulations of the SEC promulgated thereunder.

4.      Venue is proper in this District pursuant to Section 22 of the Securities Act and 28 U.S.C. § 1391(c). Many of the acts and transactions that give rise to the violations of law alleged herein, including the dissemination to the public of a materially untrue and misleading DISCS Registration Statement, occurred in this District. During the relevant period, Ambac and many of the Underwriter Defendants maintained their principal executive offices in this District.

5.     In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

### III.    PARTIES

#### A.    Plaintiff

6.     Plaintiff Painting Industry Insurance and Annuity Funds purchased DISCS pursuant to the DISCS Registration Statement, and was injured thereby.

#### B.    Defendant Ambac

7.     Defendant Ambac is a New York-based holding company whose subsidiaries provide financial guarantee products and financial services to both public and private sector clients. Ambac's principal executive offices are located at One State Street Plaza, New York, New York 10004. Ambac Assurance Corporation is its primary operating subsidiary. Ambac was the issuer of securities in the February 2007 DISCS Offering.

#### C.    The Individual Defendants

8.     Defendant Sean T. Leonard ("Leonard") is, and at all relevant times was, Senior Vice President and Chief Financial Officer ("CFO") of Ambac and Ambac Assurance. In those capacities, on February 6, 2007, Leonard signed Post-Effective Amendment No. 1 to the Ambac Registration Statement.

9.     Defendant Robert J. Genader ("Genader") was at all relevant times until January 17, 2008, a director, President and Chief Executive Officer ("CEO") of Ambac. Pursuant to a power-of-attorney, defendant Leonard signed the Post-Effective Amendment No. 1 on behalf of

3

Genader in Genader's capacity as Ambac's Principal Executive Officer.  Defendants Leonard and Genader are collectively referred to as the "Officer Defendants".

10.     Defendant Phillip B. Lassiter ("Lassiter") was at all relevant times a director of Ambac.   Pursuant to a power-of-attorney, defendant Leonard signed the Post-Effective Amendment No. 1 on behalf of Lassiter in Lassiter's capacity as an Ambac director.

11.     Defendant Michael A. Callen ("Callen") was at all relevant times a director of Ambac.   Pursuant to a power-of-attorney, defendant Leonard signed the Post-Effective Amendment No. 1 on behalf of Callen in Callen's capacity as an Ambac director.

12.     Defendant Jill M. Considine ("Considine") is, and at all relevant times was, a director of Ambac.   Pursuant to a power-of-attorney, defendant Leonard signed the Post-Effective Amendment No. 1 on behalf of Considine in her capacity as an Ambac director.

13.     Defendant W. Grant Gregory ("Gregory") is, and at all relevant times was, a director of Ambac.   Pursuant to a power-of-attorney, defendant Leonard signed the Post-Effective Amendment No. 1 on behalf of Gregory in Gregory's capacity as an Ambac director.

14.     Defendant Thomas C. Theobald ("Theobald") is, and at all relevant times was, a director of Ambac.   Pursuant to a power-of-attorney, defendant Leonard signed the Post-Effective Amendment No. 1 on behalf of Theobald in Theobald's capacity as an Ambac director.

15.     Defendant Laura S. Unger ("Unger") is, and at all relevant times was, a director of Ambac.   Pursuant to powers-of-attorney, defendant Leonard signed the Post-Effective Amendment No. 1 on behalf of Unger in Unger's capacity as an Ambac director.

16.     Defendant Henry Wallace ("Wallace") is, and at all relevant times was, a director of Ambac.   Pursuant to powers-of-attorney, defendant Leonard signed the Post-Effective Amendment No. 1 on behalf of Wallace in Wallace's capacity as an Ambac Director.

4

Defendants Leonard, Genader, Lassiter, Callen, Considine, Gregory, Theobald, Unger and Wallace are collectively referred to as the "Individual Defendants."

### D.    The Underwriter Defendants

17.    Defendant Citigroup Global Markets Inc. ("Citigroup") was an underwriter for the February 2007 DISCS Offering.  Citigroup acted as a Joint Book-Running Manager and Sole Structuring Advisor.  Pursuant to the DISCS Registration Statement, Citigroup sold $140 million principal amount of DISCS in the Offering.

18.    Defendant Goldman, Sachs & Co. ("Goldman") was an underwriter for the February 2007 DISCS Offering.  Goldman acted as a Joint Book-Running Manager.  Pursuant to the DISCS Registration Statement, Goldman sold $80 million principal amount of DISCS in the Offering.

19.    Defendant J.P. Morgan Securities Inc. ("J.P. Morgan") was an underwriter for the February 2007 DISCS Offering.  J.P. Morgan acted as a Joint Book-Running Manager.  Pursuant to the DISCS Registration Statement, J.P. Morgan sold $80 million principal amount of DISCS in the Offering.

20.    Defendant HSBC Securities (USA) Inc. ("HSBC") was an underwriter for the February 2007 DISCS Offering.  Pursuant to the DISCS Registration Statement, HSBC sold $20 million principal amount of DISCS in the Offering.

21.    Defendant Lehman Brothers Inc. ("Lehman") was an underwriter for the February 2007 DISCS Offering.  Pursuant to the DISCS Registration Statement, Lehman sold $20 million principal amount of DISCS in the Offering.

22.    Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") was an underwriter for the February 2007 DISCS Offering.  Pursuant to the DISCS Registration

Statement, Merrill Lynch sold $20 million principal amount of DISCS in the Offering.

23.     Defendant UBS Securities LLC ("UBS") was an underwriter for the February 2007 DISCS Offering.  Pursuant to the DISCS Registration Statement, UBS sold $20 million principal amount of DISCS in the Offering.

24.     Defendant Wachovia Capital Markets, LLC ("Wachovia") was an underwriter for the February 2007 DISCS Offering.  Pursuant to the DISCS Registration Statement, Wachovia sold $20 million principal amount of DISCs in the Offering.  Defendants Citigroup, Goldman, HSBC, Lehman, Merrill Lynch, UBS and Wachovia are collectively referred to as the "Underwriter Defendants."

## IV.     CLASS ACTION ALLEGATIONS

25.     Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons or entities who purchased Ambac DISCS issued pursuant to the DISCS Registration Statement and were injured thereby (the "Class").  Excluded from the Class are (i) defendants; (ii) members of the immediate family of each Individual Defendant; (iii) any person who was an officer or director of Ambac or any of the Underwriter Defendants; (iv) any firm, trust, corporation, officer, or other entity in which any Defendant has or had a controlling interest; and (v) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded party.

26.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are hundreds of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Ambac or its transfer agent, and may be notified

of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.    Plaintiff's claims are typical of the claims of other Class members. Plaintiff and all Class members acquired DISCS and sustained damages as a result of defendants' violations of the Securities Act.

28.    Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel competent and experienced in class action and securities litigation. Plaintiff has no interests that are contrary to or in conflict with those of the Class members that Plaintiff seeks to represent.

29.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    whether the Securities Act was violated by the defendants' acts as alleged herein;

(b)    whether the DISCS Registration Statement and the SEC filings incorporated by reference therein, with respect to Ambac's business, operations and management, made misstatements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

(c)    whether and to what extent the Class members have sustained damages.

30.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Also, because the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for members of the Class to individually redress the wrongs done to them.

31.     There will be no difficulty encountered in the management of this litigation that would preclude its maintenance as a class action.

## V.     OVERVIEW OF SECURITIES ACT CLAIMS

32.     Ambac is the world's second largest financial guarantee insurer – a business which Ambac began in 1971 when it agreed to insure a municipal general obligation bond.

33.     On February 7, 2007, Ambac and the Underwriter Defendants sold $400 million face value of DISCS to the investing public.  The DISCS were sold to enable Ambac to repurchase $400 million of shares of its common stock.

34.     The DISCS are unsecured, subordinated debt instruments that pay interest at an annual rate of 6.15% of principal value, and Ambac has the right to defer interest for up to ten consecutive years.  The DISCS may be redeemed in whole by Ambac at any time.  The DISCS are to mature on February 15, 2037, but only to the extent that Ambac successfully makes an offering and receives proceeds from the sale of certain capital securities issued to repay the DISCS, which Ambac is required to use its commercially reasonable efforts to complete.  On February 7, 2087, Ambac is obligated to pay any remaining outstanding principal and interest in full on the DISCS whether or not it has sold sufficient qualifying capital securities to permit redemption.

35.     The DISCS were offered and sold pursuant to the DISCS Registration Statement. The Post-Effective Amendment was signed by defendant Leonard on his own behalf, and, pursuant to powers-of-attorney, on behalf of the other Individual Defendants.

36.     When Ambac disclosed the losses suffered from these volatile securities in late 2007 and early 2008, the DISCS lost nearly all of their value, while Ambac's rapid and severe

decline wreaked havoc on global credit markets. As of July 23, 2008, the DISCS traded at $27.10.

## VI.    MISSTATEMENTS AND OMISSIONS IN THE DISCS REGISTRATION STATEMENT

37.    The Post-Effective Registration Statement and the DISCS Prospectus each incorporated, *inter alia*, the following documents by reference: Ambac's Form 10-Q filed on September 30, 2006, and Ambac's Form 8-Ks filed on October 25, 2006 and January 31, 2007. The October 25, 2006 and January 31, 2007 Form 8-Ks incorporated as exhibits Ambac's press releases of the same dates announcing AMBAC'S net income for the quarters ended September 30, 2006 and December 31, 2006, respectively. In addition, a "Recent Developments" section in the DISCS Prospectus summarized certain fourth quarter and full year 2006 financial results reported in Ambac's January 31, 2007 press release, including Ambac's net income.

38.    The October 25, 2006 press release disclosed that Ambac had a third quarter net income of $213.5 million, or $1.98 per diluted share. The press release quoted defendant Genader as stating:

> We are currently witnessing a solid level of deal inquiries and opportunities across most of our business segments. . . We remain steadfast in judiciously allocating our capital to transactions that enable us to continue to deliver superior returns.

39.    With respect to reserves, the October 25, 2006 press release stated that

> Active credit reserves ('ACR') are established for probable and estimable losses due to credit deterioration on adversely classified insured transactions. Ambac continuously monitors its insured portfolio actively seeking to mitigate claims. The ACR increased by $0.6 million during the quarter, from $147.0 million at June 30, 2006 to $147.6 million at September 30, 2006. The increase was driven by increased reserves on certain credits within the U.S. public finance and structured finance portfolios, offset by a $35.6 million reduction in the ACR for Hurricane Katrina impacted credits.

40.     The press release included a Consolidated Statement of Operations, *inter alia*, for the three months ended September 30, 2006. Financial Guaranty net mark-to-market gains on credit derivatives contracts were $501,000 and losses and loss expenses were ($2.543) million. Ambac's total revenues were $460.307 million, and net income for the quarter was $213.513 million, or $1.98 per diluted share. Losses and loss expense reserves were $279.614 million, and derivative liabilities were $935.440 million. Each of these items was directly impacted by changes to Ambac's CDS mark-to-market adjustments, or by changes to its reserves.

41.     The third quarter 2006 Form 10-Q represented that Ambac's consolidated unaudited interim financial statements have been prepared on the basis of U.S. generally accepted accounting principles ("GAAP") and, in the opinion of management, reflect all adjustments necessary for a fair presentation of Ambac's financial condition, results of operations and cash flows for the periods presented."

42.     With respect to loss reserves, the third quarter 2006 Form 10-Q touted Ambac's "active surveillance" of its insured portfolio to identify "adversely classified" credits. The third quarter 2006 Form 10-Q stated, *inter alia*, that:

> Active surveillance of the insured portfolio enables Ambac's Surveillance Group to track credit migration of insured obligations from period to period and prepare an adversely classified credit listing. The active credit reserve is established only for adversely classified credits. *The criteria for an exposure to be included on the adversely classified credit listing includes the deterioration in an issuer's financial condition, underperformance of the underlying collateral (for collateral dependent transactions such as mortgage-backed securitizations), problems with the servicer of the underlying collateral and other adverse economic events or trends....* (Emphasis added).

43.     The Form 10-Q then described the process by which an active credit reserve is established once a credit is adversely identified:

> The active credit reserve is established through a process that begins with estimates of probable losses inherent in the adversely classified credit portfolio.

*These estimates are based upon: (i) Ambac's internal system of credit ratings, which are analogous to the risk ratings of the major rating agencies; (ii) internally developed historical default information (taking into consideration ratings and average life of an obligation); (iii) internally developed loss severities; and (iv) the net par outstanding on the adversely classified credit.* The loss severities and default information are based on rating agency information and are specific to each bond type and are established and approved by Ambac's Portfolio Risk Management Committee.... (Emphasis added).

44.     The 2006 third quarter Form 10-Q also stated that "Loss severity estimates are based upon available information such as rating agency recovery rates or surveillance data such as collateral appraisals;" and that, "[a]s a result of our experience to date, we note that the mortgage-backed and home equity ultimate severities have been better than or equal to our current severity assumption." With respect to CDO losses, the 2006 third quarter Form 10-Q stated that:

When calculating a modeled loss estimate for an insured CDO obligation, Ambac considers the unique attributes of the underlying collateral and transaction. It is reasonably possible that loss estimates for CDOs may increase as a result of increased severity of loss of the underlying collateral; however Ambac's exposure to CDOs in its classified portfolio is currently limited.

45.     With respect to mark-to-market valuation, the 2006 third quarter 10-Q represented that:

Fair value is determined based upon market quotes from independent sources, when available. . . For derivatives that trade in less liquid markets, such as credit derivatives or *synthetic collateralized debt obligations and total return swaps, a proprietary model is used because such instruments tend to be more complex and pricing information is not readily available in the market. These models and the related assumptions are continuously re-evaluated by management and enhanced, as appropriate, based on improvements in modeling techniques.*

46.     The January 31, 2007 press release reported fourth quarter net income of $202.7 million, or $1.88 per diluted share, "which represent[ed] a 1% decrease from fourth quarter 2005 net income of $204.3 million, or $1.90 per diluted share." For the year ended December 31,

2006, Ambac reported net income of $875.9 million, or $8.15 per diluted share – a 19% increase from the prior year.

47.     With respect to loss reserves, the January 31, 2007 press release disclosed that

Active credit reserves ('ACR') are established for probable and estimable losses due to credit deterioration on certain adversely classified insured transactions. Ambac continuously monitors its insured portfolio actively seeking to mitigate claims. The ACR increased by $25.0 million during the quarter, from $147.6 million at September 30, 2006 to $172.6 million at December 31, 2006. The increase was driven primarily by net increases in reserves on certain credits within the U.S. public finance portfolio, most notably within the transportation sector.

48.     The press release included a Consolidated Statement of Operations, *inter alia*, for the three months and twelve months ended December 31, 2006.  For the quarter, Financial Guaranty net mark-to-market gains on credit derivatives contracts were ($838,000) and losses and loss expenses were $9.598 million.  Ambac's total revenues were $454.315 million, and its net income for the quarter was $202.678 million, or $1.88 per diluted share.  For the year, Financial Guaranty net mark-to-market gains on credit derivatives contracts were $39.559 million and losses and loss expenses were $20.004 million.  Ambac's total revenues were $1,832.104 million, and its net income for the year was $875.911 million, or $8.15 per diluted share.  Losses and loss expense reserves were $220.074 million, and derivative liabilities were $667.066 million.  Each of these items was directly impacted by changes to Ambac's CDS mark-to-market adjustments, or by changes to its reserves.

49.     The above statements issued by defendants in the DISCS Registration Statement and the documents incorporated therein were materially false and misleading when made for the following reasons:

12

     a.     Ambac's internal controls and risk management practices were inadequate, causing the Company's loss projections and financial results reported during the class period to be misstated;

     b.     Ambac's financial statements were materially misstated due to its failure to properly account for the mark-to-market losses relating to its CDOs, MBSs and credit default swaps;

     c.     Given the deterioration and increased volatility of the mortgage market, Ambac would be forced to tighten its underwriting practices for structured finance products, including CDOs and MBSs, which would have a material, negative impact on its revenues from premiums going forward;

     d.     Ambac had far greater exposure to anticipated losses and defaults related to its CDOs, including its highly rated CDOs, than it had previously disclosed, and;

     e.     Defendants' statements about the Company's selective underwriting practices concerning CDOs and other structured finance products belied the true, aggressive and inadequate underwriting practices employed by the Company during the class period.

## COUNT I
### (Against Ambac, Individual Defendants and Underwriter Defendants for Violations of Section 11 of the Securities Act)

50.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

51.     This Count is brought pursuant to Section 11 of the Securities Act, on behalf of all persons who purchased or otherwise acquired DISCS issued pursuant to the February 2007 DISCS Offering. The Count is asserted against all of the Defendants.

52.     The DISCS Registration Statement contained untrue statements of material facts and omitted material facts required to be stated in order to make the statements contained therein not misleading, as set forth more fully above in paragraph 49.

53.     Ambac was the issuer of the DISCS.  As such, Ambac is strictly liable to the members of the Class who purchased DISCS pursuant to the DISCS Registration Statement for the materially untrue statements and omissions alleged herein.

54.     The Individual Defendants signed Post-Effective Amendment No. 1 or authorized it to be signed on their behalf, and who were responsible for the contents and dissemination of DISCS Registration Statement.  As such, the Officer Defendants issued, caused to be issued, and participated in the issuance of the DISCS Registration Statement, which contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts as described above in paragraph 49.  By reasons of the conduct alleged herein, each of these Defendants violated Section 11 of the Securities Act.

55.     The Underwriter Defendants (Citigroup, Goldman, J.P. Morgan, HSBC, Lehman, Merrill Lynch, UBS and Wachovia), were underwriters of the February 2007 DISCS Offering and are liable to purchasers of DISCS who were harmed thereby.

56.     Plaintiffs and other members of the Class who acquired DISCS issued in the February 2007 DISCS Offering pursuant to the DISCS Registration Statement did not know of the facts concerning the untrue statements of material fact and omissions alleged herein, and could not have reasonably discovered such facts or conduct.

57.     None of the untrue statements or omissions alleged here were forward looking statements but, rather, concerned existing facts.  Moreover, the Defendants did not disclose information that undermined the validity of those statements.

58.     Less than one year elapsed from the time that Plaintiffs discovered or reasonably could have discovered the facts upon which this complaint is based to the time that the first complaint was filed asserting claims arising out of the falsity of the DISCS Registration Statement.  Less than three years elapsed from the time that the securities upon which this Count is brought were offered to the public to the time that the first complaint was filed asserting claims arising out of the falsity of the DISCS Registration Statement.

59.     Plaintiffs and the other members of the Class have sustained damages.  The value of the DISCs sold in the February 2007 DISCS Offering has declined substantially subsequent to and due to Defendants' violations of Section 11 of the Securities Act.  Plaintiff's and the other Class members' damages are a direct and proximate result of the untrue statements and omissions in the DISCS Registration Statement.

60.     By reason of the foregoing, each of the Defendants is liable for violations of Section 11 of the Securities Act to Plaintiffs and the other members of the Class who purchased or otherwise acquired DISCs in the February 2007 DISCS Offering pursuant to the DISCS Registration Statement.

## COUNT II
### (Against Defendants Ambac and the Underwriter Defendants for Violations of Section 12(a)(2) of the Securities Act)

61.     Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

62.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of all persons who purchased or otherwise acquired Ambac DISCs issued in the February 2007 DISCS Offering.  This Count is asserted against defendant Ambac and the Underwriter

15

Defendants (Citigroup, Goldman, J.P. Morgan, HSBC, Lehman, Merrill Lynch, UBS and Wachovia).

63.     Defendants' liability under this Count is predicated on their participation in conducting the February 2007 DISCS Offering pursuant to the DISCS Prospectus, which contained untrue statements and omissions of material fact.

64.     Ambac was a seller, offeror, and/or solicitor of sales of the securities offered pursuant to the DISCS Registration Statement.  The DISCS Prospectus contained untrue statements of material fact or omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading, as set forth above in paragraph 49 Ambac's actions and solicitations included participating in the preparation of the materially untrue and misleading DISCS Prospectus.

65.     The Underwriter Defendants are sellers within the meaning of the Securities Act because they: (a) transferred title of Ambac DISCS to Plaintiff and other members of the Class who purchased DISCs issued pursuant to the DISCS Prospectus; (b) transferred title of Ambac DISCS to other underwriters and/or broker-dealers that sold those securities as agents for the Underwriter Defendants; and (c) solicited the purchase of DISCS by Plaintiff and other members of the Class, motivated at least in part by the desire to serve the Underwriter Defendants' own financial interest and the interests of Ambac, including but not limited to commissions on their own sales of Ambac DISCs and separate commissions on the sale of those securities by non-underwriter broker-dealers.

66.     The Underwriter Defendants used means and instrumentalities of interstate commerce and the U.S. mails.

67.     The Underwriter Defendants owed to Plaintiffs and all other purchasers or other acquirers of Ambac DISCs the duty to make a reasonable and diligent investigation of the statements contained in the offering materials, including the DISCS Prospectus, to ensure that such statements were true and that there was no omission of material act necessary to prevent the statements contained therein from being misleading.  The Underwriter Defendants did not make a reasonable investigation or possess reasonable grounds to believe that the statements contained in the DISCS Prospectus were true and without omissions of any material facts and were not misleading.  Accordingly, the Underwriter Defendants are liable to Plaintiffs and the other members of the Class who purchased DISCs in the February 2007 DISCS Offering.

68.     Plaintiffs and other members of the Class purchased or otherwise acquired Ambac DISCS in the DISCS Offering and they did not know, or in the exercise of reasonable diligence could not have known, of the untruths and omissions contained in the DISCS Prospectus.

69.     By virtue of the conduct alleged herein, Ambac and the Underwriter Defendants violated Section 12(a)(2) of the Securities Act.  Accordingly, Plaintiffs and other members of the Class who purchased in the February 2007 DISCS Offering pursuant to the DISCS Prospectus have the right to rescind and recover the consideration paid for their securities and interest, and hereby elect to rescind and tender their securities to Ambac and the Underwriter Defendants. Plaintiffs and the members of the Class who have sold their securities purchased in the February 2007 DISCS Offering are entitled to rescissory damages.

### COUNT III
#### (Against the Individual Defendants for
#### Violations of Section 15 of the Securities Act)

70.     Plaintiffs repeat and reallege each of the allegations set forth above as if fully set forth herein.

17

71.     This Count is asserted against the Individual Defendants (Genader, Leonard, Lassiter, Callen, Considine, Gregory, Theobald, Unger, and Wallace) for violations of Section 15 of the Securities Act, 15 U.S.C. §77o, on behalf of Plaintiffs and the other members of the Class who purchased or otherwise acquired DISCs issued in the February 2007 DISCS Offering.

72.     At all relevant times, the Individual Defendants were controlling persons of the Company within the meaning of Section 15 of the Securities Act.  Each of the Individual Defendants served as an executive officer or director of Ambac prior to and at the time of the February 2007 DISCS Offering.  Specifically, defendant Leonard served as Ambac's Senior Vice President and Chief Financial Officer; defendant Genader served as Ambac's Chairman, Chief Executive Officer, President and a director of Ambac; and defendants Lassiter, Callen, Considine, Gregory, Theobald, Unger, and Wallace each served as a director of Ambac prior to and at the time of the February 2007 DISCS Offering.

73.     Defendants Leonard and Genader at all relevant times participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of Ambac's business affairs. As officers of a publicly owned company, the Officer Defendants had a duty to disseminate accurate and truthful information with respect to Ambac's business, financial condition and results of operations.  Defendants Leonard and Genader participated in the preparation and dissemination of the 2007 DISCS Registration Statement, and otherwise participated in the process necessary to conduct the February 2007 DISCS Offering. Because of their positions of control and authority as senior officers of Ambac, the Officer Defendants were able to, and did, control the contents of the 2005 Registration Statement, which contained materially untrue information.

74.     As directors of a publicly owned company, defendants Lassiter, Callen, Considine, Gregory, Theobald, Unger, and Wallace had a duty to disseminate accurate and truthful information with respect to Ambac's business, financial condition and results of operations. Defendants Lassiter, Callen, Considine, Gregory, Theobald, Unger, and Wallace signed the Post-Effective Amendment No. 1 and thereby controlled the contents and dissemination of the DISCS Registration Statement, which contained materially untrue information.

75.     By reason of the aforementioned conduct, each of the defendants named in this Count is liable under Section 15 of the Securities Act, jointly and severally with, and to the same extent as Ambac is liable under Sections 11 and 12(a)(2) of the Securities Act, to Plaintiff and the other members of the Class who purchased DISCs in the February 2007 DISCS Offering. As a direct and proximate result of the conduct of the DISCS Offering by the Individual Defendants, Plaintiff and the other members of the Class suffered damages in connection with their purchase or acquisition of the DISCS.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

(a)     Declaring this action to be a proper class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(b)     Declaring and determining that the Defendants violated the federal securities laws as charged above;

(c)     Awarding Plaintiff and the Class compensatory damages;

(d)     Awarding rescission or a rescissory measure of damages;

(e)     Awarding Plaintiff and the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees and other costs; and

(f)     Awarding such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand trial by jury in this action of all issues so triable.

Dated: July 24, 2008

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

Frederic S. Fox
Donald R. Hall
Hae Sung Nam
Melinda D. Rodon
Aviah Cohen Pierson
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714

*Attorneys for Plaintiff*

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES

I, ___Joseph Ramaglia_____, hereby certify and swear as follows:

1. I, ___Joseph Ramaglia_____, on behalf of the Painting Industry Insurance and Annuity Funds, have reviewed a Complaint against **Ambac Assurance Corporation, et al.** alleging violations of the securities laws and authorize its filing;

2. Painting Industry Insurance and Annuity Funds is willing to serve as a representative party on behalf of a class or to be a member of a group representing a class, including providing testimony at deposition and trial, if necessary;

3. Painting Industry Insurance and Annuity Funds has filed the following civil actions as a representative party on behalf of a class in an action brought under the federal securities laws during the last three years: <u>None</u>

4. The following is a description of Painting Industry Insurance and Annuity Funds' transactions of Directly-Issued Subordinated Capital Securities ("DISCS") issued on or about February 7, 2007 by Ambac Financial Group, Inc.:

| Security Name | Transaction Type | Trade Date | Units | Amount |
|---|---|---|---|---|
| AMBAC FINL GRP INC BD DTD 02/12/07 6.15% 02/07/2087 | Purchase | 2/7/2007 | 15,000 | $14,900.25 |

5. Painting Industry Insurance and Annuity Funds did not purchase DISCS issued by Ambac Financial Group, Inc. at the direction of its counsel or in order to participate in any private action under the federal securities laws;

6. Painting Industry Insurance and Annuity Funds will not accept any payment for serving as a representative party on behalf of a class beyond its pro rata share of any recovery, except as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Date: ___July 24_____, 2008

_____
Joseph Ramaglia
Painting Industry Insurance and Annuity Funds

Trustee and Chairman